**BEEHIVE TELEPHONE COMPANY, INC. and Beehive Telephone Nevada, Inc., Petitioners**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Southwestern Bell Telephone Company, et al., Intervenors**

No. 97–1662.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1998.

Decided June 18, 1999.

942

George L. Lyon, Jr. argued the cause for petitioners. On the briefs was Russell D. Lukas.

K. Michele Walters, Counsel, Federal Communications Commission, argued the cause for respondents. On the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, John E. Ingle, Deputy Associate General Counsel, and Laurel R. Bergold, Counsel.

John M. Goodman, William B. Barfield, M. Robert Sutherland, James D. Ellis, Patricia Diaz Dennis, Robert M. Lynch and Robert B. McKenna were on the brief for Bell Company intervenors. David F. Brown and Michael E. Glover entered appearances.

Before: EDWARDS, Chief Judge, GINSBURG, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Federal Communications Commission, holding that access to the central database of routing information for toll-free telephone numbers is a common carrier telecommunications service, required the Bell Operating Companies (BOCs) to file a tariff of rates for that service. *See In the Matter of Provision of Access for 800 Service (CompTel Declaratory Ruling),* 8 F.C.C.R. 1423, ¶¶ 25–29 (1993). When the BOCs filed the tariff as directed, the Beehive Telephone Companies (collectively Beehive) filed a formal complaint against them, claiming that the Commission lacks authority to require that the service be tariffed. The Commission denied the complaint, and Beehive petitions for review, arguing, in addition to the question of the Commission's authority, that the Commission violated its rules regarding *ex parte* contacts in complaint proceedings, and that the Commission has failed to implement a provision of the Telecommunications Act of 1996 that requires it to transfer operation of the toll-free database to an "impartial" entity, 47 U.S.C. § 251(e)(1).

We deny the petition for review. Beehive does not have standing under Article III of the Constitution to bring the first two claims; as to the third, it has not exhausted its administrative remedies.

I. Background

Toll-free telephone service (commonly called 800 service) involves a subscriber agreeing to pay an interexchange carrier (IXC) for all calls made to it using a predesignated 800 number. Toll-free service thus enables a business to provide its customers, potential customers, employees, and others with a free and convenient means of contacting it.

Since 1993 a nationwide computer-based Service Management System has been used to route each 800 call to the appropriate IXC, which then forwards the call to the subscriber. The SMS also makes 800 numbers portable; that is, a subscriber may change carriers without having to change its 800 number. Otherwise, once a business had created substantial goodwill

in a toll-free number through its advertising and use, or had obtained a number with substantial marketing value because of its mnemonic appeal (such as 1–800–FLOWERS), the cost of switching to another IXC would be the loss of that number, which would inhibit competition among IXCs.

The SMS database contains information associated with each 800 number, including the identity of the carrier selected by the subscriber. *See* 47 C.F.R. § 52.101(d). That information is downloaded to 12 regional databases, called Service Control Points. When a caller places an 800 call, a switch belonging to the caller's local exchange carrier (LEC) queries the regional SCP for routing information. The SCP then instructs the switch to route the call to the subscriber's chosen IXC, which delivers the call to the subscriber.

Database Service Management, Inc. (DSMI) manages the SMS, *see* 47 C.F.R. § 52.103(f)(1), but does not itself collect or update the data the SMS uses to route calls. Instead, so-called Responsible Organizations input and update the information contained in the SMS database. *See CompTel Declaratory Ruling*, 8 F.C.C.R. 1423, ¶ 19. Any entity that meets certain financial, technical, and service-related eligibility criteria—whether an IXC, an LEC, a subscriber, or another type of entity—may serve as a Responsible Organization. *See id.* at ¶¶ 41–47. Because DSMI is a monopolist, and because access to the SMS database is necessary to the provision of toll-free service, the Commission requires DSMI to provide Responsible Organizations with such access under a tariff; the agency's purpose is to ensure "that SMS access is provided at reasonable rates and on nondiscriminatory terms." *Id.* at ¶ 29.

In 1993 the Commission required the BOCs, which at that time jointly owned DSMI, to file an SMS access tariff. *See id.* at ¶ 31. The Commission then suspended that tariff for one day and instituted an investigation into its lawfulness. *See In the Matter of the Bell Operating Companies' Tariff for the 800 Serv. Mgmt.*

*Sys.*, 8 F.C.C.R. 3242 (Com. Car. Bur. 1993). Eventually the Commission concluded that the rates the BOCs proposed to charge in the SMS access tariff were reasonable. *See In the Matter of 800 Data Base Access Tariffs and the 800 Serv. Mgmt. Sys. Tariff*, 11 F.C.C.R. 15,227, ¶ 251 (1996) (*SMS Tariff*).

Beehive is an LEC operating in rural Nevada and Utah. It is also a Responsible Organization. During the pendency of the above-mentioned investigation, Beehive filed a complaint against the BOCs alleging that the SMS access tariff is invalid because the Commission lacks jurisdiction under the Communications Act of 1934 to regulate SMS access as a common carrier service. *See* 47 U.S.C. § 153(10) (defining "common carrier"); *id.* § 153(52) (defining "wire communication"); *id.* §§ 201–203 (setting forth duties of common carriers). In the alternative Beehive claimed that the tariffed rates are unjust and unreasonable. *See id.* § 201(b). In a subsequent pleading Beehive also alleged that the Commission violated its own rules governing whether and to what extent third parties are allowed to have *ex parte* contacts with the Commission concerning a complaint proceeding. *See* 47 C.F.R. §§ 1.1200–1.1216 (1993).

In 1995 the Commission denied Beehive's complaint without ruling upon the issue of *ex parte* contacts. Beehive petitioned this court for review but before briefing was completed the Commission moved for a remand, which we granted, so it could pass upon the *ex parte* issue. In 1997 the Commission rejected Beehive's *ex parte* contacts claim and re-adopted and reaffirmed the 1995 opinion and order that we had vacated at its request. *See Beehive Tel., Inc. v. Bell Operating Cos.*, 12 F.C.C.R. 17,930, 17,950 (1997). Beehive again petitions for review.

## II. Analysis

Beehive argues first that the Commission lacks authority under the Communications Act to regulate SMS access as a

common carrier service and therefore to require tariffed rates. Second, Beehive claims the Commission violated its *ex parte* rules governing complaint proceedings. Finally, Beehive asserts that the agency has failed in a timely fashion to require that the toll-free database be transferred to "one or more impartial entities," as required by 47 U.S.C. § 251(e)(1). The Commission responds that Beehive lacks standing to raise the first two claims, and that Beehive cannot obtain review of the § 251(e)(1) claim because it did not first present it to the Commission. We agree with the Commission in both respects.

### A. Statutory Authority and Violation of the *Ex Parte* Rules

 The "irreducible constitutional minimum" for standing to sue the Commission is that the petitioner (1) have suffered an injury in fact that was (2) caused by the Commission and (3) would likely be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Beehive asserts two injuries: the payments it has made and will continue to make under the allegedly unlawful SMS tariff, and its loss of business when DSMI, because Beehive ceased paying certain of the charges, withdrew all but 185 of the 10,000 toll-free numbers that Beehive had reserved. As to causation, Beehive claims that although its injuries were the direct result of actions taken by DSMI, they were proximately caused by the Commission's requirement that SMS access be tariffed. *See Telephone & Data Sys. v. FCC*, 19 F.3d 42, 47 (D.C.Cir. 1994) ("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality"). Beehive does not explain how the Commission's alleged violation of its *ex parte* rules contributed to either of the injuries it asserts. In the event, however, we need not decide whether Beehive adequately alleges injury in fact and causation because Beehive has not shown how any order we might issue could redress its asserted injuries.

Beehive argues that prospective detariffing of SMS access would redress its continuing injury from payment of unlawfully tariffed rates. The Commission responds that such a remedy would actually exacerbate Beehive's injury: If there were no tariff, then Beehive would have to negotiate with a monopolist and almost certainly would have to pay more than the tariffed rates for SMS access. That seems right to us. *See* STEPHEN G. BREYER & RICHARD B. STEWART, ADMINISTRATIVE LAW AND REGULATORY POLICY 223 (2d ed.1985) ("[W]hen monopoly is the problem, the purpose of government ratemaking is of course to impose *maximum* prices to protect the public from monopolistic exploitation"). *But cf.* George J. Stigler & Claire Friedland, *What Can Regulators Regulate? The Case of Electricity*, 5 J.L. & ECON. 1 (1962) (casting doubt on assumption that regulation appreciably lowers electricity rates). Indeed, the BOCs resisted having to file a tariff for SMS access—undoubtedly because they believed they could charge a higher rate as an unregulated than as a regulated monopoly. *See CompTel Declaratory Ruling*, 8 F.C.C.R. 1423, ¶ 23. In its brief Beehive made no attempt to rebut the Commission's argument. At oral argument counsel for Beehive asserted that it could negotiate a better rate from the BOCs without a tariff, but was at a loss to explain how or why that might be so. Nor can we imagine how Beehive would be better off without the tariff, especially considering that the Commission found it to be just and reasonable. *See SMS Tariff*, 11 F.C.C.R. 15,227, ¶ 251.

Beehive also argued before the Commission that it could be made whole by an award of damages in the amount it had paid for SMS access, plus interest, and the return of the toll-free numbers it had lost for nonpayment of the charges levied under the tariff. The BOCs contend that they may not be held liable for charges incurred under a tariff that the

Commission required them to file, and that Beehive therefore may not obtain the retrospective relief it sought before the Commission. Accordingly, the BOCs reason, even if we were to find that the Commission lacks authority to require that SMS access be offered under a tariff, then the only available remedy would be prospective detariffing.

Beehive does not respond to this argument, and its cryptic request that we order the Commission to "reconsider Beehive's claims for relief" does not suffice to join the issue. Moreover, when asked at oral argument whether prospective detariffing is the only relief now at stake in this proceeding, counsel referred solely to Beehive's claim under § 251(e) (which we discuss below) and failed to assert that Beehive continues to seek either damages or the return of its numbers. We conclude that Beehive has (not unreasonably) abandoned its claim for retrospective relief.

Beehive apparently seeks no remedy that could redress its claimed injuries. Accordingly, we hold that Beehive lacks standing to complain that the Commission violated its statutory authority and its *ex parte* rules.

B. Section 251(e)

██ Beehive also claims the Commission has been derelict in its duty to implement a provision of the Telecommunications Act of 1996 that requires it to "designate one or more impartial entities to administer telecommunications numbering." 47 U.S.C. § 251(e)(1); *see also id.* § 251(d)(1) ("Within six months after February 8, 1996, the Commission shall complete all actions necessary to establish regulations to implement the requirements of this section"). The Commission counters that the § 251(e) claim is not properly before the court because Beehive did not present it to the Commission in this proceeding and thereby failed to exhaust its administrative remedies. *See* 47 U.S.C. § 405(a) (barring judicial review of issues upon which FCC "has been afforded no opportunity to pass").

Beehive responds first that in its 1994 complaint initiating this proceeding it requested that the Commission transfer management of the SMS system to a neutral third party, as § 251(e) presumably now requires. Although Beehive did indeed request that relief, it did so, as the Commission points out, under a different legal theory, which was rejected and which Beehive does not raise in its current petition for review. *See Beehive Tel.*, 12 F.C.C.R. 17,950, ¶ 33 (rejecting claim that BOCs were required under 47 U.S.C. § 214(a) to obtain certificate of public convenience before constructing SMS). Consequently, Beehive's 1994 complaint did not place the § 251(e) claim before the Commission; indeed, that section did not then exist.

Beehive next points to other proceedings before the Commission in which it has raised § 251(e), arguing that it has therefore afforded the Commission an opportunity to pass upon the issue. In the principal case upon which it relies, however, *DIRECTV, Inc. v. FCC*, 110 F.3d 816, 825 (D.C.Cir.1997), we excused the petitioner's failure to raise an issue before the Commission because the agency had considered it *sua sponte* in that same proceeding; clearly that case does not assist Beehive. Just as the Commission need not "sift pleadings and documents to identify arguments that are not stated with clarity by a petitioner," *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 279 (D.C.Cir.1997), we see no reason the Commission should be required to sift through pleadings in other proceedings in search of issues that a petitioner raised elsewhere and might have raised here had it thought to do so; indeed, such a duty would be inconsistent with our adversarial system, in which the petitioner "has the burden of clarifying its position before the agency." *Id.* at 280.

Beehive next claims it would have been futile to ask the Commission to consider its claim under § 251(e) after we remanded this matter because the Commission in its 1995 order had declined to reopen the record in order to address certain issues regarding divestiture of the BOCs' interest

in DSMI. We fail utterly to see how the Commission's refusal to entertain the divestiture issue in 1995 shows that it would have been futile for Beehive to raise it subsequently under a provision enacted in 1996.

Beehive also contends that it would have been futile to present the Commission with the § 251(e) claim upon remand because the agency need not "consider any claim not included specifically in Beehive's original complaint." But that can hardly be true of a claim that arises after the complaint has been filed; indeed, the Commission sought a remand to consider Beehive's claim regarding *ex parte* contacts, which arose subsequent to the filing of its complaint. Similarly, the § 251(e) claim arose only upon enactment of that section, which was after Beehive filed its complaint (and before our remand), yet Beehive never presented it to the Commission, whether by seeking leave to amend its complaint or otherwise. We therefore hold that Beehive's § 251(e) claim is precluded because Beehive failed to exhaust its administrative remedies.

### III. Conclusion

In summary, we hold that Beehive lacks Article III standing to raise two of its claims and that our review of its third claim is precluded because Beehive failed to exhaust its administrative remedies. Accordingly, the petition for review is

*Dismissed in part and denied in part.*