HI–TECH FURNACE SYSTEMS, INC.
and Robert E. Kornfeld,
Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.

Sprint Communications Company
L.P., Intervenor.

No. 99–1220.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 22, 2000.

Decided Aug. 8, 2000.

Michael C. Spencer argued the cause and filed the briefs for petitioner. Steven G. Schulman entered an appearance.

Laurel R. Bergold, Counsel, Federal Communications Commission, argued the cause for respondent. With her on the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, and John E. Ingle, Deputy Associate General Counsel.

Leon M. Kestenbaum and Michael B. Fingerhut were on the brief for intervenor Sprint Communications Company L.P.

Before: EDWARDS, Chief Judge, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Hi–Tech Furnace Systems, Inc. and its president, Robert E. Kornfeld,[1] filed a complaint with the Federal Communications Commission (FCC) concerning revisions Sprint Communications made in a long distance calling program known as "Fridays Free." Concluding that the revisions were lawful, the FCC denied the complaint. We affirm.

I

Sprint, a common carrier regulated under the Communications Act of 1934, provides long distance telephone service to the public. See 47 U.S.C. §§ 153(h), 203. Hi–Tech is a small business located in the state of Michigan. On December 14, 1995, Sprint filed tariff provisions proposing to offer its new and existing "Business Sense" customers a promotion under which they would be able to make free domestic and international long distance calls on one day of the week for twelve months. Sprint selected Friday as the day for free service and promoted its new offering as "Fridays Free." The Fridays Free tariff provisions went into effect on January 1, 1996.[2]

On February 29, 1996, Hi–Tech enrolled in the Fridays Free program by signing Sprint's standard agreement form. The agreement committed subscribers to a minimum enrollment term of two years and a minimum monthly usage requirement of $50. In compliance with the agreement, Hi–Tech switched its long distance service to Sprint.

Shortly after initiating Fridays Free, Sprint began experiencing a substantial increase in international call volume on Fridays. The growth was so pronounced that it produced capacity problems at Sprint's international gateway switch in New York.[3] The volume of traffic im-

---

1. For ease of reference, Hi–Tech and its president will be referred to collectively as "Hi–Tech" or "petitioner."

2. Section 203(a) of the Communications Act requires every communications common carrier to file with the FCC a schedule of its charges, and the "classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). In this case, the Fridays Free promotion was a revision of Sprint's existing Business Sense tariff.

3. During the period at issue in this case, an international call had to go through the "gateway switch" that connected with the international cable system serving the country to

paired the carrier's ability to complete calls to many international locations and threatened to crash Sprint's international network. *See Hi–Tech Furnace Sys. v. Sprint Communications Co.,* 14 F.C.C.R. 8040, 8047–48 (1999) [hereinafter *Hi–Tech*]. Sprint tried to handle the overload by installing a new, more powerful processor at the New York gateway. Nonetheless, call volume on Fridays remained at dangerously high levels and continued to increase. *See id.* at 8042, 8047.

On April 4, 1996, in an effort to ameliorate the overload problem, Sprint filed a tariff revision to take effect on April 18. Under the revision, Sprint removed 10 countries[4] with high numbers of calls from the list of approximately 220 foreign locations to which free calling was permitted under the Fridays Free program. Sprint subsequently restored one country, the Dominican Republic, to the list, leaving a total of nine deletions. Sprint notified its subscribers of the modifications by mailgram. In lieu of free Friday calling to the deleted countries, Sprint offered subscribers a 25% discount on calls to those countries every day of the week. Sprint also allowed Fridays Free customers who did not want to continue in the program to terminate their subscription without penalty—although it did not advise subscribers of this option unless they affirmatively communicated their lack of continued interest.

The tariff revisions immediately remedied Sprint's system capacity problems. The occupancy level of the New York gateway switch declined from 109% on April 12, to 59% on April 19, the day after the program was revised. The total number of calls made to those countries dropped from 3.69 million on April 12 to 1.43 million on April 19, 1996. *See Hi–Tech,* 14 F.C.C.R. at 8048.

On April 18, 1996, the day the tariff revisions became effective, Hi–Tech filed a class action in Missouri state court, alleging that Sprint had breached its contract with its Fridays Free subscribers. Sprint removed the case to the United States District Court for the Western District of Missouri. There, the district court concluded that Hi–Tech's complaint required a determination of the reasonableness of Sprint's revised tariff, and that such a determination was within the primary jurisdiction of the FCC. *See Hi–Tech Furnace Sys. v. Sprint Communications Co.,* No. 96–0566–CV–W–3 (W.D. Mo. May 9, 1997). The court permitted Hi–Tech to amend its complaint to add counts alleging violations of the Communications Act, and thereafter referred the case to the FCC "for all further proceedings." *Hi-Tech Furnace Sys. v. Sprint Communications Co.,* No. 96–0566–CV–W–3 (W.D. Mo. Aug. 29, 1997). At the same time, it dismissed Hi–Tech's contract claim without prejudice and denied its motion for class certification as moot.

On April 17, 1998, Hi–Tech filed a complaint against Sprint with the FCC, alleging that Sprint's curtailment of the Fridays Free program violated section 201(b) of the Communications Act because it was unjust and unreasonable,[5] and section 203(c) because it was in breach of Sprint's existing tariffs.[6] On April 16, 1999, the Commission ruled against Hi–Tech on both claims. *See Hi–Tech,* 14 F.C.C.R. at 8041. Hi–Tech then petitioned for review in this court, limiting its petition to the claim that Sprint violated section 201(b). *See Hi-*

---

which the call was made. *See* Sprint Br. at 4 n.7.

**4.** The deleted countries were Bolivia, China, the Dominican Republic, Ecuador, India, Iran, Israel, Myanmar, Pakistan, and Thailand.

**5.** Section 201(b) requires that "[a]ll charges, practices, classifications and regulations" of communications common carriers "shall be just and reasonable." 47 U.S.C. § 201(b).

**6.** Section 203(c) provides that "no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation ... for any service ... than the charges specified in the [tariff] then in effect." 47 U.S.C. § 203(c).

Tech Br. at 4 n.1. Petitioner challenges the FCC's decision on both procedural and substantive grounds, and we consider those challenges in turn.

## II

Hi–Tech levels two procedural attacks against the FCC's decision. First, it contends that the Commission improperly assigned it the burden of proof on the question of whether Sprint's tariff revisions were just and reasonable. Second, it argues that the Commission improperly denied its requests for discovery from Sprint.

### A

The FCC assigned Hi–Tech the burden of proof, holding that "[i]t is well established that, in a formal complaint proceeding brought under section 208 of the Act, the complainant has the burden of proof to demonstrate that the carrier has violated the Act." *Hi–Tech*, 14 F.C.C.R. at 8044. Hi–Tech argues that this allocation was error. First, it contends that it brought this proceeding not under Communications Act section 208,[7] but rather under section 204,[8] which expressly places the burden of proof on the carrier. *See* 47 U.S.C. § 204 ("At any hearing involving a new or revised charge, or a proposed new or revised charge, the burden of proof to show that the new or revised charge, or proposed charge, is just and reasonable shall be upon the carrier. . . ."). Second, even if the proceeding had been brought under section 208, Hi–Tech contends it would be unlawful to allocate the burden differently under that section.

■ We agree with the FCC that the complaint was brought, and properly so, under section 208 rather than section 204.[9] That Hi–Tech brought the complaint under section 208 is apparent from its own plead-

7. Section 208, entitled "Complaints to the Commission," states:

(a) Any person . . . complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition. . . . If such common carrier within the time specified shall make reparation for the injury alleged to have been caused, the common carrier shall be relieved of liability to the complainant. . . . If such carrier . . . shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper.

47 U.S.C. § 208.

8. Section 204, entitled "Hearings on new charges," states:

(a)(1) Whenever there is filed with the Commission any new or revised charge . . . or practice, the Commission may either upon complaint or upon its own initiative without complaint . . . enter upon a hearing concerning the lawfulness thereof; and pending such hearing and the decision thereon . . . may suspend the operation of such charge . . . or practice, . . . but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearing the Commis-

sion may make such order with reference thereto as would be proper in a proceeding initiated after such charge . . . or practice had become effective. If the proceeding has not been concluded and an order made within the period of the suspension, the proposed new or revised charge . . . or practice shall go into effect at the end of such period. . . . At any hearing involving a new or revised charge, or a proposed new or revised charge, the burden of proof to show that the new or revised charge, or proposed charge, is just and reasonable shall be upon the carrier. . . .

(b) Notwithstanding the provisions of subsection (a) of this section, the Commission may allow part of a charge . . . or practice to go into effect, based upon a written showing by the carrier or carriers affected . . . that such partial authorization is just, fair, and reasonable. Additionally, or in combination with a partial authorization, the Commission, upon a similar showing, may allow . . . a charge . . . or practice to go into effect on a temporary basis pending further order of the Commission.

47 U.S.C. § 204.

9. At oral argument, petitioner verified that these are the only sections at issue. Hi–Tech did not, it conceded, endeavor to bring its complaint under another possibly relevant section, section 205, which permits the FCC (on its own initiative or upon complaint) to determine that an existing rate is unjust or

ings, which attached a form identifying section 208(a) as the statutory basis for the claims. *See* Formal Complaint Intake Form (J.A. at 79). That section 208 was the proper avenue derives from an analysis of the purposes of the two sections.

The FCC interprets section 204 as granting it a quasi-legislative authority to evaluate a carrier's proposals for new or revised rates. It understands section 208, by contrast, as granting it authority, upon complaint by an injured party, to adjudicate the lawfulness of a carrier's past and present rates and practices. *See, e.g., National Exchange Carrier Ass'n,* 2 F.C.C.R. 3679, 3679 (1987) ("[I]ssues [that] ... re-

late to currently effective tariff provisions ... cannot be raised in a petition for a Section 204 investigation. Objections to an existing tariff provision may be presented in a Section 208 complaint."). We have previously expressed the same understanding,[10] and the distinction is similar to that which courts have made with respect to analogous provisions in both the Interstate Commerce Act (ICA)[11] and the Natural Gas Act (NGA).[12] As the FCC's construction constitutes a reasonable interpretation of the statutory language,[13] we are bound to defer to it. *See Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

unreasonable and to provide prospective relief. *See* 47 U.S.C. § 205; *Illinois Bell Tel. Co. v. FCC,* 966 F.2d 1478, 1482 (D.C.Cir. 1992).

**10.** *Compare Southwestern Bell Tel. Co. v. FCC,* 168 F.3d 1344, 1350 (D.C.Cir.1999) ("Section 204(a) gives the Commission the authority to approve or suspend a proposed charge...."), *and Southwestern Bell Corp. v. FCC,* 43 F.3d 1515, 1524 (D.C.Cir.1995) ("Upon complaint or on its own initiative, the Commission may hold hearings and declare unlawful proposed rate increases under section 204."), *with AT&T v. FCC,* 978 F.2d 727, 732 (D.C.Cir.1992)(describing § 208 proceeding as one in which the FCC's task was, "as an adjudicator of private rights," to determine "whether or not [the carrier] has been, and currently was, violating the law"). *See also Direct Mktg. Ass'n v. FCC,* 772 F.2d 966, 969 (D.C.Cir.1985).

**11.** 49 U.S.C. §§ 10101 *et seq. See Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 446, 450, 454, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979) (noting distinction between proceedings under ICA § 15(8)(a) to challenge proposed rate increases, and "posteffective proceedings" to protect "aggrieved" parties under ICA § 13(1)); *Baer Bros. Mercantile Co. v. Denver & Rio Grande R.R.,* 233 U.S. 479, 486, 34 S.Ct. 641, 58 L.Ed. 1055 (1914) ("[A]warding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its *quasi*-judicial capacity to measure past injuries sustained by a private shipper; the other, in its *quasi*-legislative capacity, to prevent future injury to the public."); *see also MCI Tel. Corp. v. FCC,* 59 F.3d 1407, 1418 (D.C.Cir.1995) ("Because the Congress borrowed heavily

from the Interstate Commerce Act when it drafted the Communications Act of 1934 ... both this court and the [FCC] often turn to decisions under the ICA for guidance in interpreting the Communications Act."). The Interstate Commerce Commission was abolished in 1996, and its remaining functions were transferred to the Surface Transportation Board. *See* ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995).

**12.** 15 U.S.C. §§ 717 *et seq. See Public Serv. Comm'n v. FERC,* 866 F.2d 487, 488 (D.C.Cir. 1989) (noting distinction between proceedings concerning "proposed rates" under NGA § 4, and proceedings concerning existing rates under § 5); *see also Las Cruces TV Cable v. FCC,* 645 F.2d 1041, 1047 (D.C.Cir.1981) (stating that ratesetting provisions of Communications Act are analogous to provisions of NGA and "trace their lineage" to ICA).

**13.** Section 204 contains repeated indications of its intended application to charges not yet in effect. It applies to "any new or revised" charge or practice; it permits suspension of such charge or practice for not longer than five months "beyond the time when it would otherwise go into effect"; if an order has not been issued within the period of the suspension, it provides that "the proposed new or revised" charge or practice "shall go into effect"; and it authorizes the Commission to allow a charge or practice "to go into effect on a temporary basis" pending further order. Section 208, by contrast, contains repeated indications of its intended application to past actions. For example, it permits any person complaining of anything "done or omitted to be done" by any common carrier to petition the FCC, and it relieves the carrier of liability

Hi–Tech did not file a complaint with the Commission before the Fridays Free revisions went into effect. Instead, it challenged them two years after they had been in place. Accordingly, under the foregoing interpretation of the two statutory provisions, Hi–Tech's complaint falls within section 208.

■ Unlike section 204, section 208 is silent as to which party bears the burden of proof. Hi–Tech argues that it is unlawful for the FCC to place the burden on the complainant in section 208 proceedings, when the statute places it on the carrier in proceedings under section 204. We disagree.

Well-established FCC precedent imposes the burden of proof on the complainant in section 208 proceedings.[14] So does our own.[15] Such an allocation is consistent

with the Administrative Procedure Act (APA), which takes into account the distinction between statutory provisions that do and do not mention the burden of proof, and which directs that: "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). It is likewise consistent with the Supreme Court's allocation of the burden of proof under the analogous provisions in the ICA,[16] and with our own allocation of the burden under the analogous provisions in the NGA.[17] Accordingly, we find nothing unlawful about the FCC's decision to impose upon Hi–Tech the burden of proof regarding the reasonableness of the tariff revisions.

## B

After filing its complaint with the FCC, Hi–Tech served Sprint with a set of seven

---

if it makes reparations "for the injury alleged to have been caused." *See* 47 U.S.C. § 204, set out at *supra* note 8; 47 U.S.C. § 208, set out at *supra* note 7.

**14.** *See Beehive Tel., Inc.,* 12 F.C.C.R. 17950, 17961–62 (1995) ("Although carriers who file new or revised rates bear the burden of proof in Section 204 proceedings, it is well settled that complainants in Section 208 formal complaint proceedings bear the burden of proof."), *aff'd on other grounds,* 179 F.3d 941 (D.C.Cir.1999); *see also ASCOM Communications, Inc. v. Sprint Communications Co.,* 15 F.C.C.R. 3223, 3230 n. 41 (2000); *AT&T v. Bell Atlantic,* 14 F.C.C.R. 556, 570 (1998); *Directel, Inc. v. AT&T,* 11 F.C.C.R. 7554, 7560 (1996); *Connecticut Office of Consumer Counsel,* 4 F.C.C.R. 8130, 8133 (1989), *aff'd on other grounds,* 915 F.2d 75 (2d Cir.1990). The petitioner's references to FCC opinions in agency proceedings initiated under sections other than § 208 are inapposite.

**15.** *See American Message Ctrs. v. FCC,* 50 F.3d 35, 41 (D.C.Cir.1995) (stating, regarding a case brought under § 208, that "[t]he rules place the burden of pleading and documenting a violation of the Act on [the complainant]. They do not require [the carrier] to prove it has not violated the Act."); *Aeronautical Radio, Inc. v. FCC,* 642 F.2d 1221, 1235 n. 34 (D.C.Cir.1980) (noting that the complaint procedure of §§ 206–209 "shifts the burden of proof onto the aggrieved party"). *See generally Copley Press, Inc. v. FCC,* 444 F.2d 984, 988 (D.C.Cir.1971) (holding § 204

burden-allocation provision may not be relied upon to assess burden in non–204 proceeding).

**16.** *See Southern Ry.,* 442 U.S. at 446, 450, 454, 99 S.Ct. 2388 (noting that burden of proof is on carrier in § 15(8)(a) proceeding, while burden is on shipper (customer) in § 13(1) proceeding); *Aeronautical Radio,* 642 F.2d at 1235 n. 34 (relying on *Southern Railway* for conclusion that §§ 206–209 of Communications Act "shift[ ] the burden of proof onto the aggrieved party"). *See generally supra* note 11.

**17.** In *Public Service,* we held that "[u]nder § 4 [of the NGA] the company has the burden of showing that [its] proposed rates are just and reasonable, while under § 5 the Commission must show that the [filed] rates it would alter are not just and reasonable.... The unifying principle is that the proponent of change bears the burden." 866 F.2d at 488. Section 4 of the NGA, 15 U.S.C. § 717c(e), like section 204 of the Communications Act, expressly provides that "[a]t any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company." Section 5 of the NGA, like section 208 of the Communications Act, is silent as to the burden of proof. *See ANR Pipeline v. FERC,* 771 F.2d 507, 513 (D.C.Cir.1985) (discussing different burdens of proof under NGA). *See generally supra* note 12.

788

interrogatories. Sprint objected and, Hi–Tech contends, FCC counsel declined to direct the carrier to respond.[18] Instead, the Commission undertook its own investigation, making its own demands for information from the parties and following up with supplemental inquiries. Hi–Tech contends that the agency acted unlawfully in failing to allow petitioner to conduct its own discovery.

The FCC responds that this court has no jurisdiction to review its decision not to permit discovery. It asserts that discovery is agency action "committed to agency discretion by law" within the meaning of the APA, 5 U.S.C. § 701(a)(2), and thus is not subject to judicial review. *See generally Heckler v. Chaney*, 470 U.S. 821, 828–29, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). For support, the FCC points to the broad language of Communications Act § 208(a), which states that "it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper." And it further cites our decision in *Sprint Communications Co. v. FCC*, 76 F.3d 1221, 1231 (D.C.Cir.1996), which it reads as declaring, albeit in dictum, that the Commission's refusal to permit discovery under section 208(a) is a matter within its unreviewable discretion.

The United States, represented by the Department of Justice, is by law a co-respondent with the FCC in this case. *See* 28 U.S.C. §§ 2344, 2348. In contrast to the FCC, the United States believes that the agency's decision regarding discovery is reviewable. *See* Resp'ts Br. at 32 n.69. We agree. The FCC's position confuses the narrow category of agency action wholly committed to agency discretion under APA § 701(a)(2), with the primary catego-

ry of agency action that is subject to review for "abuse of discretion" under APA § 706(2)(A). *See Heckler*, 470 U.S. at 828–29, 105 S.Ct. 1649. We do not lightly place a matter within the former category, as the APA embodies "a 'basic presumption of judicial review.'" *Lincoln v. Vigil*, 508 U.S. 182, 190, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The exception for agency action "committed to agency discretion by law" is a "very narrow" one, reserved for "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (internal quotation omitted); *see Lincoln*, 508 U.S. at 191, 113 S.Ct. 2024.

As the United States correctly points out, this court's dictum in *Sprint Communications* does not support the FCC's claim to immunity from judicial review. *Sprint* stated that "it appears that the FCC's decision *whether to investigate a particular matter* is an 'agency action ... committed to agency discretion by law.'" 76 F.3d at 1231 (emphasis added).[19] The court suggested, by its immediately-following citation to *Heckler v. Chaney*, that an agency's decision not to commence an investigation is analogous to an agency's decision not to take enforcement action—which the Supreme Court held unreviewable in *Heckler*. *See Heckler v. Chaney*, 470 U.S. at 832, 105 S.Ct. 1649. An agency's decision not to permit discovery, however, is not analogous to a decision not to take enforcement action. Unlike the latter, which the Court noted has long been regarded as committed to an agency's ab-

---

18. The FCC contends that Hi–Tech never filed a motion to compel a response.

19. Although the *Sprint* opinion noted the petitioner's objection "to the FCC's failure to permit discovery *or* to conduct an evidentiary proceeding in order to investigate the alleged fraudulent concealment," the court's com-

ment on reviewability mentioned only the "decision whether to investigate a particular matter." *Sprint Communications*, 76 F.3d at 1231 (emphasis added). Moreover, notwithstanding its comment, the court went on to review the FCC's failure and found no abuse of discretion. *See id.*

solute discretion, *see id.* at 831, 105 S.Ct. 1649 (citing precedent dating to 1869), this court and others have long reviewed agency decisions regarding discovery.[20] In fact, in *American Message Centers v. FCC,* 50 F.3d 35, 40–41 (D.C.Cir.1995), we reviewed for abuse of discretion the FCC's refusal to compel discovery in a section 208 proceeding. We follow that course here as well.

■ This court reviews such a determination, however, with "extreme deference." *Lakeland Bus Lines v. ICC,* 810 F.2d 280, 286 (D.C.Cir.1987). "[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance and will not, barring the most extraordinary circumstances, warrant the Draconian sanction of overturning a reasoned agency decision." *Trailways Lines v. ICC,* 766 F.2d 1537, 1546 (D.C.Cir.1985). Although we have concluded that the Commission's actions are reviewable for abuse of discretion, we agree with both the United States and the Commission that there has been no such abuse here.

■ In this case, a body of evidence was generated by the formal written submissions of the litigants. In addition, the FCC made its own inquiries, directing the parties to respond to detailed requests for information. The Commission also had available Sprint's responses to the discovery requests served by Hi–Tech during proceedings in the district court. As our analysis in Part III below makes clear, the sum of these measures created the record necessary to make the just and reason-

ableness determination contemplated by 47 U.S.C. § 201(b).

Hi–Tech's real dispute is not with the discovery measures the FCC took, but with additional measures it did not take. Specifically, petitioner insists that the Commission should have permitted Hi–Tech itself to take discovery from Sprint, in the form of its own interrogatories and depositions, in order to test Sprint's responses "through normal adversarial proceedings." Hi–Tech Br. at 17. But Hi–Tech's demand misapprehends the nature of the administrative process it entered into when its complaint was ousted from the district court and referred to the FCC. As we have pointed out before in affirming an FCC decision not to compel discovery sought by a petitioner: Complaint proceedings under the Communications Act, "unlike court litigation or administrative-trial type hearings, are often resolved solely on the written pleadings," and the Commission has properly "placed limitations on the scope and methods of discovery in its formal complaint proceedings that do not exist in trials governed by the Federal Rules." *American Message Ctrs.,* 50 F.3d at 41; *see McClelland v. Andrus,* 606 F.2d 1278, 1285 (D.C.Cir.1979) ("The extent of discovery that a party engaged in an administrative hearing is entitled to is primarily determined by the particular agency: ... courts have consistently held that agencies need not observe all the rules and formalities applicable to courtroom proceedings.").

■ Nothing in either the Communications Act or the APA entitles a party to the specific procedures Hi–Tech demands.

---

**20.** *See Lakeland Bus Lines v. ICC,* 810 F.2d 280, 287–88 (D.C.Cir.1987) (reversing in part ICC denial of petitioner's discovery request on ground that denial relied on inaccurate factual premise); *Trailways Lines v. ICC,* 766 F.2d 1537, 1546 (D.C.Cir.1985) (reviewing, but upholding as reasonable, ICC's rejection of petitioners' discovery request); *Cross-Sound Ferry Svcs., Inc. v. ICC,* 738 F.2d 481, 486–87 (D.C.Cir.1984) (holding that ICC's failure to gather sufficient evidence from applicant for common carrier authority was ar-

bitrary and capricious); *McClelland v. Andrus,* 606 F.2d 1278, 1286 (D.C.Cir.1979) (reviewing agency discovery decision and remanding for further consideration); *Virginia Petroleum Jobbers Ass'n v. FPC,* 293 F.2d 527, 529 (D.C.Cir.1961); *see also, e.g., Pacific Gas and Elec. Co. v. FERC,* 746 F.2d 1383, 1387–88 (9th Cir.1984); *Armstrong, Jones & Co. v. SEC,* 421 F.2d 359, 364 (6th Cir.1970); *NLRB v. Gala–Mo Arts, Inc.,* 232 F.2d 102, 106 (8th Cir.1956).

**790**

To the contrary, and as the FCC properly emphasizes, section 208 of the Communications Act expressly authorizes the Commission "to investigate the matters complained of in such manner and by such means as it shall deem proper." 47 U.S.C. § 208; *cf. FCC v. Schreiber*, 381 U.S. 279, 289, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). Moreover, the Supreme Court has firmly instructed us that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA" or statute. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). Although "[a]gencies are free to grant additional procedural rights in the exercise of their discretion,"[21] "reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

*Cross-Sound Ferry Services, Inc. v. ICC*, cited by petitioner, is not to the contrary. 738 F.2d 481, 486–87 (D.C.Cir. 1984). In that case, a ferry company challenged the ICC's decision to grant common carrier authority to its competitor, the Bridgeport & Port Jefferson Steamboat Company (B&PJ). On appeal from the agency, this court held that the ICC had acted arbitrarily in failing to gather the information necessary to make the statutory determination of whether the proposed service was " 'required by the present or future public convenience and necessity.' " *Id.* at 482–84 (quoting 49 U.S.C. § 10922(a)). We did not, however, say that the error was the ICC's failure to permit discovery by the complainant. Rather, the error was the Commission's refusal to generate an appropriate record—"by requiring greater specificity from B&PJ *or* by permitting Cross-Sound to ferret out relevant evidence through discovery"—which left the ICC without

"sufficient record evidence to permit a reasoned application of statutory directives." *Id.* at 484 (emphasis added).

As we have noted above, the FCC did compile a record sufficient to make the statutory determination at issue in this case. Hi–Tech does not specify any additional information that should have been obtained, nor does it point out any way in which conducting its own discovery would have made a difference—other than to emphasize its skepticism of the "self-serving" nature of Sprint's responses and the need to test them by the adversary process. Since the Supreme Court has made clear that we are not permitted to impose any such testing procedure on an agency, we have no basis for setting aside the FCC's decision.

**III**

◼ With these preliminary matters attended to, we now reach the merits of Hi–Tech's complaint. We review the FCC's denial only to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see American Message Ctrs.*, 50 F.3d at 39.

◼ The gravamen of Hi–Tech's complaint is that the changes Sprint made in its Fridays Free program breached the requirement of section 201(b) that "charges, practices, classifications, and regulations ... be just and reasonable." 47 U.S.C. § 201(b). To determine whether the revisions met the statutory standard, Hi–Tech urged the Commission to employ its so-called "substantial cause" test: that is, to determine whether Sprint had "substantial cause" to amend the tariff. *See* Hi–Tech Br. at 21–23; *see generally Showtime Networks Inc. v. FCC*, 932 F.2d 1 (D.C.Cir.1991) (discussing "substantial cause" test for determining whether tariff

---

**21.** FCC regulations permit complainants to file requests for interrogatories, but leave it to Commission staff to "determine the interrogatories, if any, to which parties shall respond." 47 C.F.R. § 1.729(d). The regulations also authorize the Commission, in its discretion, to allow additional discovery, including depositions. *See* 47 C.F.R. § 1.729(h).

modifications are just and reasonable); *RCA American Communications, Inc.,* 86 F.C.C.2d 1197, 1201–02 (1981) (holding that a carrier's decision "to revise material provisions in the middle of a term" will be considered "reasonable" if the carrier can make a showing of "substantial cause" for so doing). The FCC noted that it had previously applied the substantial cause test only to revisions of individually-negotiated contract tariffs and to revisions of generic, long-term service tariffs filed by dominant carriers. *See Hi–Tech,* 14 F.C.C.R. at 8045–46. The Commission had not yet decided, however, whether the test should be applied to "a nondominant carrier's generic, long-term service tariff, such as the Fridays Free promotion at issue here." *Id.* at 8046. Nonetheless, the FCC agreed to apply the standard, arguendo, to Sprint's tariff revisions. *See id.*

■ Under the substantial cause test, the FCC measures the reasonableness of a tariff modification by weighing two principal considerations: the "carrier's explanation of the factors necessitating the desired changes at that particular time," and the "position of the relying customer." *RCA American,* 86 F.C.C.2d at 1201; *see Hi–Tech,* 14 F.C.C.R. at 8045. The FCC resolved the first factor in Sprint's favor, concluding that "Sprint has demonstrated that the tariff revisions were necessary to prevent the overloading of Sprint's network, despite reasonable efforts by Sprint to preserve the Fridays Free promotion in its original form." *Hi–Tech,* 14 F.C.C.R. at 8046. The Commission found that on each successive Friday after the promotion began, call volume increased dramatically. *See id.* By late March, "the extraordinarily high call volumes on Fridays threatened to bring down Sprint's New York international gateway switch ... which repeatedly reached over 100% of designed traffic capacity." *Id.* at 8047. Moreover, "because of this international overload, the New York domestic switch ... also approached overload levels." *Id.* Together, "[t]hese system overloads prevented the completion

of many international calls from all over the country." *Id.*

The FCC also found that Sprint had taken steps to try to resolve the overload problem short of deleting countries from the Fridays Free program. *See id.* Sprint purchased and installed a new processor, and it changed the routing of calls so that the domestic New York switch would receive less traffic. *See id.* Despite these efforts, "[t]raffic loads continued to increase dangerously" and threatened to crash the gateway switch. *Id.* at 8047–48. Sprint then filed its tariff revisions, and on the first Friday after they took effect, call volume dramatically decreased and the threat was eliminated. *See id.* at 8048.

These findings reasonably support the FCC's conclusion that Sprint satisfied the first half of the substantial cause test, by establishing its need for the revisions in the Fridays Free program. This was not a case in which the carrier sought midterm changes based merely on a "generalized assertion of rising costs," *RCA American,* 86 F.C.C.2d at 1205, or on a claim "that it will make less money" without them, *AT&T Communications,* 5 F.C.C.R. 6777, 6779 (1990)—rationales the agency has found unpersuasive in the past. Here, the FCC concluded that revisions were necessary "to protect the integrity of [Sprint's] network"—to prevent the crash of key switches with consequent disruption for all of Sprint's subscribers. *Hi–Tech,* 14 F.C.C.R. at 8050. Although Hi–Tech argues that Sprint could have expanded its facilities rather than curtail the program, the FCC reasonably noted that Sprint had already tried that to no avail, and that further expansion of Sprint's international capacity would have required negotiations with a foreign carrier, a process that could not have been completed in time to resolve the capacity crisis. *See id.* at 8048.

Hi–Tech also argues that Sprint should have employed a "less onerous" alternative than deletion of the nine countries. Hi–Tech Br. at 26. Of course, deletion was

itself a less drastic alternative than canceling the entire program: Sprint continued to permit free Friday calling to more than 200 foreign locations, as well as to all domestic locations. Nonetheless, Hi–Tech argues that Sprint could have retained free calling to the nine countries, but "spread the program benefits over more days of the week" by "designating different days of the week for different segments of customers." *Id.* at 26–27 (quoting Compl. ¶ 27). Sprint should not be permitted to revise its tariff "in a way that is economically beneficial to the carrier," Hi–Tech insists, "when better and fairer alternatives are available." *Id.* at 27.

■ The FCC rejected this demand. The Commission noted Sprint's representations that such a plan would have been impractical, and noted that Hi–Tech had failed to offer any evidence to the contrary. *See Hi–Tech,* 14 F.C.C.R. at 8049. It further pointed out that Hi–Tech had failed to show why free calling on one day of the week was any more reasonable than the alternative Sprint adopted: a 25% discount every day. The FCC's statutory mandate is only to ensure that tariff revisions are "just and reasonable," 47 U.S.C. § 201(b), not that they are the "least onerous" alternative available. *See Showtime,* 932 F.2d at 4 (holding that substantial cause test is only an aid in ascertaining whether newly filed modifications to long-term tariffs are "within the zone of reasonableness," and "not an additional hurdle" for carriers to overcome). And our statutory mandate is only to ensure that the agency's determinations are themselves reasonable, regardless of whether there may be other "better and fairer" alternatives. *Cf. Serono Labs., Inc. v. Shalala,*

158 F.3d 1313, 1321 (D.C.Cir.1998). The FCC's finding with respect to Sprint's need for the tariff revisions meets that standard.

■ Turning to the second half of the substantial cause test, the FCC looked for evidence of Hi–Tech's reliance on the provisions of the Fridays Free plan—and found it to be minimal. Hi–Tech's president conceded that he had switched to Sprint not only because of the Fridays Free promotion, but also because Sprint's "rate was attractive in itself." J.A. at 228 (Kornfeld Dep.). There was no evidence that, during the month and a half in which it subscribed to the unrevised Fridays Free program, Hi–Tech had made any calls to any of the nine deleted countries—with the exception of three calls its president made after Sprint announced the revisions, calls he conceded making to take advantage of the last free-calling opportunity under the program. *See Hi–Tech,* 14 F.C.C.R. at 8049; J.A. at 237, 239, 241 (Kornfeld Dep.). Nor did the company offer evidence to show that it had been any better off under Fridays Free than it was under the new 25% discount plan. And while Hi–Tech contends that it should be able to support its case by showing the detrimental reliance of Sprint customers other than itself—because it initially filed the case in court as a class action[22]—there is no evidence of such reliance in the record. To the contrary, the Commission concluded that because Sprint permitted Fridays Free customers to terminate their contracts without penalty if they were dissatisfied with the revisions, they were "no worse off than if they had never enrolled in Sprint's Fridays Free promotion." *Hi–Tech,* 14 F.C.C.R. at 8050.[23]

---

**22.** *But see Krauss,* 14 F.C.C.R. 2770, 2774 (1999) (finding it inappropriate to determine carrier's liability for injuries to other subscribers, as that "would, in effect, transform this section 208 complaint proceeding into a class action suit, a result neither contemplated by, nor consistent with, the private remedies created under sections 206 through 209 of the Act"); *Certified Collateral Corp.,* 2

F.C.C.R. 2171, 2173 (1987) (noting that FCC rules "do not contemplate class action complaints").

**23.** The FCC also noted that the standard order form signed by Hi–Tech stated that the promotion was "governed by the applicable Sprint tariffs, as they may be amended from time to time." *Hi–Tech,* 14 F.C.C.R. at 8050.

In sum, we discern no abuse of discretion in the agency's conclusion that the tariff revisions were just and reasonable under both prongs of the substantial cause test.

## IV

 As a final argument, Hi–Tech contends that the FCC should have used "commercial contract law principles" to resolve this case, and that if it had, Hi–Tech would have prevailed. It further argues that because the FCC did not employ such principles, we are obliged to vacate the Commission's order. Without deciding what the result would be under "commercial contract law principles," it is clear that petitioner has misperceived both the Commission's role in this dispute and our own.

Hi–Tech's breach-of-contract claims were dismissed by the district court in Missouri, and we have no jurisdiction (and have not been asked) to review that decision. Instead, under review here is the FCC's determination of whether Sprint's tariff revisions were just and reasonable— which is, as we have noted above, the only authority the Commission has under section 201(b) of the Communications Act. At Hi–Tech's own request, the Commission agreed to evaluate reasonableness under the "substantial cause" standard. That test requires an evaluation of the carrier's need for tariff revisions and of the subscriber's reliance on the tariff's original terms. Although these factors may reflect familiar contract law principles, *see, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 261 (1979), they are not intended to replicate contract law analysis, but only to assist the FCC in determining whether the revisions were "within the zone of reasonableness" required by the statute. *Showtime,* 932 F.2d at 4; *see Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488 (7th Cir.1998) (holding that "[a]ny rights that the plaintiff has to complain about a breach of contract" in a tariff revision case are evaluated "by the principle of reasonableness that the FCC uses to determine the validity of ... an amendment to a tariff.")

As we have also stressed above, our authority is limited to determining whether the FCC's determination was itself reasonable—that is, whether the agency's decision was "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). Finding no violation of that deferential standard, we deny the petition for review.

The Commission did not rest on this point in stating its ultimate conclusion, *see id.* at 8050, and we would not regard it as sufficient to establish lack of justified reliance on the part of Hi–Tech. Although Sprint was free to amend its tariff, it could not do so—regardless of the boilerplate language—unless the amendment was "just and reasonable" under § 201. *See RCA American,* 86 F.C.C.2d at 1202 ("[T]he mere presence of some sweeping reservation to unilaterally change any and all terms and conditions will not serve to lessen our original concerns.").