GLOBAL NAPS, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Verizon Delaware, Inc.,
et al., Intervenors.

No. 00–1136.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 2001.

Decided April 27, 2001

Christopher W. Savage argued the cause and filed the briefs for petitioner. John D. Seiver entered an appearance.

Lisa E. Boehley, Counsel, Federal Communications Commission, argued the cause for respondents. With her on the brief were Christopher J. Wright, General Counsel, John E. Ingle, Deputy Associate General Counsel, A. Douglas Melamed, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Robert J. Wiggers, Attorneys. Laurel R. Bergold, Counsel, Federal Communications Commission, and Nancy C. Garrison, Attorney, U.S. Department of Justice, entered appearances

Aaron M. Panner argued the cause for intervenors Verizon Telephone Companies. With him on the brief were Mark L. Evans, Michael E. Glover, Edward H. Shakin and Lawrence W. Katz.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge.

Petitioner Global NAPs, Inc. ("GNAPs") seeks review of a Federal Communications Commission ("FCC") ruling that GNAPs' tariff for Internet-bound traffic was facially invalid under FCC regulations. GNAPs raises both procedural and substantive challenges to the FCC's order. Specifically, GNAPs contends that the FCC violated its own rules and due process requirements in voiding the tariff, misconstrued the tariff terms, and improperly invalidated the tariff retroactively. We hold that the FCC did not deprive GNAPs of due process, did not exceed its authority by invalidating the tariff, and reasonably declared GNAPs' tariff unlawful. Therefore we uphold the FCC's order and deny the petition for review.

## I. Background

### A. Statutory & Regulatory Context

#### 1. Reciprocal Compensation

Under Section 251(b) of the Telecommunications Act of 1996, local exchange carriers ("LECs") are required to "establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). This means that when a customer of Carrier X calls a customer of Carrier Y who is within the same local calling area, Carrier X pays Carrier Y for completing, or "terminating," the call. The FCC interprets this requirement to apply only to local calls—that is, calls that originate and terminate within a local area. The reciprocal compensation requirement "do[es] not apply to the transport or termination of interstate or intrastate interexchange traffic." *In re Implementation of the Local Competition Provisions in the Telecom. Act of 1996*, 11 F.C.C.R. 15,499, 16,013 ¶ 1034, 1996 WL 452885 (1996) (subsequent history omitted).

Under the Act, carriers are expected to negotiate the rate and terms of reciprocal compensation. If the carriers are unable to reach agreement, they may submit the contested issues to arbitration by the relevant state public utility commission ("PUC"). 47 U.S.C. § 252(e)(1). Once the PUC approves an interconnection agreement, it is charged with interpreting and enforcing the agreement, but the PUC's determinations are subject to review in federal court for consistency with the Act. *See* 47 U.S.C. § 252(e)(6).

In February 1999, the FCC published an order holding that Internet-bound calls to Internet Service Providers ("ISPs") are not local on the theory that such traffic does not originate and terminate in the same local calling area, and is therefore not covered by the reciprocal compensation obligation. *See In re Implementation of the Local Competition Provisions in the Telecom. Act of 1996, Inter-carrier Compensation for ISP–Bound Traffic*, 14 F.C.C.R. 3689, 1999 WL 98037 (1999) ("*Reciprocal Compensation Ruling*"). While the call to the ISP may be local, the FCC concluded that the terminating end of the call is actually the site reached by the Internet connection. The FCC noted that there was no federal rule governing intercarrier compensation for Internet-bound traffic, but held that carriers would be bound to provide compensation as provided under their respective interconnection agreements as interpreted by state PUCs. *Id.* at 3704 ¶ 24. The FCC also initiated a rulemaking on an appropriate federal inter-carrier compensation mechanism. *Id.* at 3707 ¶ 28. While this rulemaking was underway, the affected LECs petitioned this court for review of the FCC's decision. We vacated and remanded the order for the Commission's failure to provide an adequate explanation as to why Internet-bound calls were not treated as local calls. *See Bell Atlantic Tel. Cos. v. FCC*, 206 F.3d 1 (D.C.Cir.2000).

#### 2. Tariff Requirements

Under Section 201(b) of the Telecommunications Act, all interstate communications "charges, practices, classifications, and regulations" must be "just and reasonable." 47 U.S.C. § 201(b). Carriers must publish rate tariffs before they go into effect. Published tariffs "must contain clear and explicit explanatory statements regarding the rates and regulations." 47 C.F.R. § 61.2 (a). Tariffs may not "make reference to any other tariff publication or to any other document or instrument." *Id.* at § 61.74(a). Tariffs filed by nondominant carriers, such as GNAPs, take effect on only one day's notice. Such tariffs receive streamlined review and are pre-

sumed lawful by the Commission. Failure to comply with the relevant regulatory provisions "may be grounds for rejection" of the tariff. *Id.* at § 61.1(b).

## B.  Relevant Facts

GNAPs is a competitive local exchange carrier ("CLEC") in several states. GNAPs and Intervenor Verizon, an LEC formerly known as Bell Atlantic, have interconnection agreements in several states. In April 1997, the two carriers entered into an interconnection agreement including a provision that "[r]eciprocal compensation only applies to the transport and termination of Local Traffic" defined as "a call which is originated and terminated within a given [Local Access and Transport Area or 'LATA']" in Massachusetts. The parties did not agree as to whether the agreement's reciprocal compensation provisions covered Internet-bound traffic, but agreed to abide by the interpretation of the Massachusetts Department of Telecommunications and Energy ("DTE")—the Massachusetts PUC—of either the GNAPs–Verizon agreement or identical language in other agreements to which Verizon was a party.

On October 21, 1998, DTE ruled that Verizon was required to pay reciprocal compensation for the delivery of Internet-bound traffic by MCI WorldCom. *Complaint of MCI WorldCom, Inc.,* D.T.E. 97–116 (Mass. D.T.E. Oct. 21, 1998). At the time, DTE directed Verizon to pay reciprocal compensation to other LECs with which it had similar agreements within the state. Shortly thereafter, however, the FCC published the *Reciprocal Compensation Ruling* declaring that Internet-bound traffic is interstate, not local. DTE responded on May 19, 1999 by vacating its October decision and declaring that Verizon was not required to pay reciprocal compensation for Internet-bound traffic,

but may be required to pay compensation under the interconnection agreement. *Complaint of MCI WorldCom, Inc.,* D.T.E. 97–116–C (Mass. D.T.E. May 19, 1999). On February 25, 2000, after this Court vacated the FCC's order, DTE reaffirmed its May 1999 ruling, but this ruling is the subject of ongoing litigation. *Complaint of MCI WorldCom, Inc.,* D.T.E. 97–116–D (Mass. D.T.E. Feb. 25, 2000).

On April 14, 1999, while the DTE proceedings were underway (and before the DTE vacated its initial decision) GNAPs filed a tariff imposing an $0.008 per minute charge on the delivery of all Internet-bound calls for which GNAPs "does not receive compensation ... under the terms of an interconnection agreement." The tariff further provided that a carrier's "[f]ailure ... to actually compensate [GNAPs] for ISP–bound traffic as local traffic under the terms of an Interconnection Agreement shall constitute an election to compensate [GNAPs] under the terms of this Tariff." On May 27, 1999, GNAPs billed Verizon under this tariff over $1.7 million for fifteen days of service. Verizon refused to pay.

## C.  The FCC Proceedings

On July 8, 1999 Verizon filed a complaint against GNAPs' tariff under Section 208 of the Communications Act. Verizon alleged that 1) the tariff was inconsistent with FCC rules insofar as the FCC exempted ISPs from access charges and provided for joint provision of access service to interexchange carriers, 2) the tariff preempted state determination of inter-carrier compensation for interstate Internet-bound traffic, 3) the tariff made Verizon an involuntary GNAPs customer, and 4) the tariff imposed excessive rates. Specifically, Verizon alleged "GNAPs has no right to circumvent the negotiation and arbitration process that the DTE and this Commission

have directed it to follow by unilaterally filing a federal tariff." After a status conference, the FCC directed briefing on ten issues concerning the legality of the tariff and the applicability of specific FCC rules, including "why Global NAPs filed a federal tariff and whether that was reasonable." *In re Bell Atlantic–Delaware, Inc.*, E–99–22 (Aug. 19, 1999).

On December 2, 1999, the FCC declared GNAPs' tariff unlawful under section 201(b) and *void ab initio*. *In re Bell Atlantic–Delaware, Inc., et al. v. Global NAPs, Inc., Memorandum Opinion and Order*, 15 F.C.C.R. 12,946, 1999 WL 1083837 (1999) *("Order")*. The FCC found that the challenged tariff provisions violated the requirement of 47 C.F.R. § 61.2 that tariffs be "clear and explicit" because "those tariff provisions condition the imposition of charges on circumstances that were indeterminate when the tariff took effect and remain indeterminate today." *Id.* ¶ 2. Additionally, the FCC found that the tariff impermissibly cross-referenced another document—in this case the interconnection agreement between GNAPs and Verizon—in violation of 47 C.F.R. § 61.74(a). The Commission noted that at the time the tariff was filed, the parties did not know whether GNAPs would receive reciprocal compensation from Verizon for Internet-bound traffic because the DTE proceedings were still underway.

On January 3, 2000, GNAPs petitioned for reconsideration of the FCC's order. GNAPs raised several arguments. First, GNAPs argued that in basing its decision on grounds not raised by Verizon or briefed by either party, the FCC denied GNAPs its right to notice and due process and illegally relieved Verizon of its burden of proof. GNAPs further argued that the FCC, by voiding the tariff retroactively, illegally denied GNAPs just compensation for the interstate services it provided to

Verizon. Finally, GNAPs claimed that the FCC's order was wrong on the merits and the tariff was legal under the Act and applicable FCC regulations.

The FCC denied GNAPs' petition on March 22. *In re Bell Atlantic–Delaware, Inc., et al. v. Global NAPs, Inc., Order on Reconsideration*, 15 F.C.C.R. 5,997, 2000 WL 294414 (2000) *("Reconsideration Order")*. The FCC rejected GNAPs procedural claims, explaining that its initial *Order* was based on issues that were antecedent to those raised by Verizon's complaint, and therefore could be considered. The FCC further rejected GNAPs' contentions that the tariff was lawful and that GNAPs was due compensation for services rendered to Verizon.

On March 24, 2000, GNAPs petitioned for review of both orders.

## II. Notice

Petitioner GNAPs contends the FCC violated both its own rules and GNAPs' due process rights by basing its ruling on legal arguments that were not presented by either party nor raised by the FCC in its August 1999 briefing order. According to GNAPs, only those issues pled to the Commission are properly before it. Therefore, GNAPs claims, the Commission was precluded from basing its decision on any other grounds. By doing otherwise, GNAPs claims the FCC violated its due process rights and the *Order* must be set aside.

The FCC's rules require that a petitioner plead "[a]ll matters concerning a claim ... fully and with specificity." 47 C.F.R. § 1.720(a). As interpreted by the FCC, these rules bar a complainant from amending or otherwise "introducing new issues late in the development of the case." *In re Implementation of the Telecom. Act of 1996*, 12 F.C.C.R. 22,497, 22,-597 ¶ 241, 1997 WL 735480 (1997).

GNAPs claims that any departure from those rules violates GNAPs' due process rights. Specifically, GNAPs alleges that the FCC's conduct contradicts the Administrative Procedure Act's ("APA") requirement that a party "shall be timely informed of ... the matters of fact and law asserted." 5 U.S.C. § 554(b). *See Amoco Prod. Co. v. Fry,* 118 F.3d 812, 819 (D.C.Cir.1997) ("Notice and a meaningful opportunity to challenge the agency's decision are the essential elements of due process."). The lack of notice, GNAPs claims, made it impossible for it to respond to the arguments upon which the FCC ultimately made its decision. Proper notice, GNAPs claims, would have enabled it "to cut its losses early on by amending its tariff." Brief for Petitioner at 27.

■ The FCC responds to GNAPs' procedural claims by arguing that it voided GNAPs' tariff based on legal theories that were "antecedent" to those raised by Verizon. The FCC could not determine the reasonableness of the tariff without determining what it covered, and that question was indeterminate given the ongoing DTE proceedings. We agree. Though the precise legal theories relied upon by the Commission were different than those raised by Verizon, GNAPs cannot credibly argue that the effect of the ongoing state proceeding on GNAPs' tariff and Verizon's payment obligations was not squarely before the agency. GNAPs cites *Virginia State Corp. Comm'n v. MCI,* 14 F.C.C.R. 4744, 1999 WL 152543 (1999), for the proposition that in a Section 208 proceeding, the FCC may only consider those issues briefed by the complainant. While the FCC declined to consider issues raised *sua sponte* by Commission staff in *Virginia State Corp.,* it was not because the Commission lacked the authority to do so. Rather, the FCC concluded that "[i]n the particular circumstances" of that case the unbriefed issues "raised difficult and important issues warranting extensive analysis by the parties and the Commission." *Id.* at 4753 ¶ 24 n. 65. It was these "particular circumstances," and not the complainant's failure to raise particular issues standing alone, that would have deprived the parties "a full and fair opportunity" to address the issues. *Id.*

There is no dispute that the FCC declared GNAPs' tariff unlawful "for reasons other than those asserted" by Verizon. *Order* at ¶ 14. This does not, however, mean that GNAPs was deprived due process. Even assuming that the FCC violated its own rules, GNAPs had adequate opportunity to meet the charges on reconsideration. GNAPs addressed the substance of the FCC's findings in its petition for reconsideration (while claiming not to), and identified no significant evidence that might have changed the FCC's conclusions. Unless we are given concrete reason to believe otherwise, we will trust that an agency properly discharged its obligation to reconsider those issues presented in a petition for reconsideration; "we cannot consider the reconsideration to have been a sham." *U.S. Satellite Broad. Co. v. FCC,* 740 F.2d 1177, 1186 (D.C.Cir.1984). We therefore proceed to review the merits of the FCC's decision.

### III. Merits

#### A. Standard of Review

■ Under the APA, a reviewing court must uphold an FCC order unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "deferential standard" that "presume[s] the validity of agency action." *Southwestern Bell Tel. Co. v. FCC,* 168 F.3d 1344, 1352 (D.C.Cir. 1999). The FCC is due substantial deference in its implementation of the Commu-

nications Act, and "even greater deference" when interpreting its own rules and regulations. *Capital Network Sys. v. FCC,* 28 F.3d 201, 206 (D.C.Cir.1994). A similar standard applies to the FCC's interpretation of tariffs. Such interpretations should be upheld where they are "reasonable [and] based upon factors within the Commission's expertise." *American Message Centers v. FCC,* 50 F.3d 35, 39 (D.C.Cir. 1995) (citation omitted). Reversing an FCC tariff interpretation should only occur where it "is not supported by substantial evidence, or the [Commission] has made a clear error in judgment." *Id.* (citation omitted).

## B. The Tariff

■ The FCC found GNAPs' tariff to be ambiguous and to contain an impermissible cross-reference. Either is a sufficient ground to declare the tariff illegal. GNAPs maintains that a proper reading of its tariff shows that it is not ambiguous and does not contain an impermissible cross-reference. Whereas the FCC and Verizon contend that the tariff is conditional on another document—the referenced interconnection agreement—GNAPs maintains that the tariff is conditional on whether GNAPs was actually paid for carrying the traffic, irrespective of the reason. GNAPs claims the tariff is not unclear or ambiguous, as carriers will know whether they paid GNAPs and therefore will know whether the tariff applies. For the same reason, GNAPs claims, the tariff should not be read to contain an impermissible cross-reference in violation of 47 C.F.R. § 61.74(a).

The FCC clearly has the better of this argument. 47 C.F.R. § 61.74(a) provides that "no tariff publication filed with the Commission may make reference to any other tariff publication or to any other document or instrument." The relevant portion of the tariff reads: "This tariff applies to all ISP-bound traffic for which [GNAPs] does not receive compensation from the Delivering LEC *under the terms of an interconnection agreement.*" (Emphasis added.) From these words it is unmistakable that the application of the tariff is contingent upon whether GNAPs is paid "under the terms of an interconnection agreement." If GNAPs receives payment for some other reason, this would not satisfy the condition, and payment would still be due under the tariff. The tariff, on its face, violates the FCC's rule. Any reasonable construction of the tariff's language would require a customer to consult the interconnection agreement to determine whether the tariff applied.

■ The FCC also reasonably concluded that the tariff violates 47 C.F.R. § 61.2(a) which provides that tariffs must be clear and explicit "[i]n order to remove all doubt as to their proper application." When GNAPs filed the tariff, the DTE proceedings were still underway. As a result, it remained unclear whether the GNAPs–Verizon interconnection agreement required compensation for Internet-bound traffic. If a party could not know whether compensation was due under the agreement, it could not know whether any payment to GNAPs was "under the terms of an interconnection agreement." If a party could not reasonably ascertain the "proper application" of the tariff at the time it was filed, the tariff was unclear and therefore was invalid.

DTE's subsequent dismissal of GNAPs' claim for compensation under the agreement did not "cure" its ambiguity for several reasons. First, the FCC's *Order* focused on whether the tariff was valid *at the time it was filed.* GNAPs revised its tariff on February 14, 2000, eliminating the provisions found unlawful by the FCC. DTE's subsequent ruling could not retro-

actively cure the deficiency of the tariff in effect prior to February 14 or affect the validity of charges GNAPs sought to assess Verizon prior to that point. In addition, because GNAPs appealed the DTE finding, that matter was not resolved when the FCC made its determination. Finally, even had the DTE ruling cured the tariff's indeterminacy, it did not eliminate the impermissible cross-reference.

### C. Statutory Structure

In a final effort to avoid the inevitable, GNAPs argues that the FCC does not have the authority to invalidate tariffs under Section 208, but only acts as an "adjudicator of private rights." *AT&T v. FCC,* 978 F.2d 727, 732 (D.C.Cir.1992). In GNAPs' view, it would be proper for the FCC to award damages to one party or another, but not to declare a tariff unlawful on its face. Challenges to tariffs themselves, GNAPs claims, must proceed under Sections 204 and 205, which relate to modifying or invalidating tariffs.

■ This argument is no more successful than GNAPs' creative reading of its own tariff. As we noted just last year, Section 204 grants the FCC "quasi-legislative authority to evaluate a carrier's proposals for new or revised rates." *Hi-Tech Furnace Sys., Inc. v. FCC,* 224 F.3d 781, 786 (D.C.Cir.2000). Section 208, on the other hand, grants "authority, upon complaint by an injured party, to adjudicate the lawfulness of a carrier's past and present rates and practices." *Id.* It is difficult to conceive of this case as other than an adjudication of "the lawfulness of a carrier's ... present rates and practices."

### D. Relief

GNAPs argues, in the alternative, that even if the FCC was correct to declare the tariff unlawful, the FCC erred by "retroactively invalidating" the tariff. Whatever the deficiencies of the tariff in this case, GNAPs argues, it is not so deficient as to justify retroactive invalidation under the standards set forth in *ICC v. American Trucking Assn's,* 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984). The retroactive invalidation is not, in GNAPs' view, "legitimate, reasonable, and direct[ly] adjunct to the Commission's explicit statutory power." *Id.* at 365, 104 S.Ct. 2458 (internal quotation omitted). While acknowledging that the FCC has the authority to order a complete refund of tariff overcharges, GNAPs argues that the Commission must consider the equities before ordering such a result. *See Virgin Islands Tel. Corp. v. FCC,* 989 F.2d 1231, 1240 (D.C.Cir.1993); *Las Cruces TV Cable v. FCC,* 645 F.2d 1041, 1047–48 (D.C.Cir. 1981). Not only did the FCC not award GNAPs any compensation, but it did not even bother to consider whether to exercise its discretion. Thus, even if the Court sides with the FCC on the merits, GNAPs argues that a remand is necessary for the FCC to consider whether payment to GNAPs for services rendered is due.

■ GNAPs' argument that relief under Section 208 of the Act cannot be retroactive in effect is clearly wrong. Section 208 is designed to enable parties to obtain redress for a carrier's violation of the Act or the FCC's regulations. Yet insofar as Section 208 authorizes the award of damages or other remedies, it is always "retroactive" in its application in that it will always be changing the economic consequences of a carrier's prior conduct. The remedy here—complete invalidation of GNAPs' tariff—may be more severe than consequential damages, but it is no more backward-looking.

The FCC notes that it may be inappropriate for GNAPs to have filed its tariff in the first place. The FCC has not authorized, let alone required, carriers to file

tariffs for local Internet-bound traffic. Instead, the Commission expected carriers to enter into interconnnection agreements that would set compensation subject to state commission approval. Merely because a tariff is presumed lawful upon filing does not mean that it is lawful. Such tariffs still must comply with the applicable statutory and regulatory requirements. Those that do not may be declared invalid. Indeed, GNAPs acknowledges that "[a] tariff that is so plainly defective as to be a legal nullity may be declared retroactively invalid—*void ab initio*—in order to ensure that an injustice is not worked on the affected customers." Brief for Petitioner at 36. That was the case here. The FCC found that the tariff, on its face, violated the plain meaning of the FCC's tariff regulations and therefore was unlawful from the date of issuance. This is sufficient to satisfy the test laid out in *American Trucking Ass'ns* as the FCC voided a tariff in furtherance of a "specific statutory mandate" to which the action was "directly and closely tied." 467 U.S. at 367, 104 S.Ct. 2458. The other cases cited by GNAPs—*Virgin Islands Tel. Corp.* and *Las Cruces TV Cable*—are distinguishable, as they involved refunds for unreasonable rates, and not a patently unlawful tariff.

While we uphold the FCC's conclusion that the tariff was *void ab initio* and invalid from the date it was published, we have not left GNAPs without opportunity to seek redress. Our holding today does not foreclose GNAPs' ability to seek compensation under the interconnection agreement before the DTE as well as to seek a negotiated compensation settlement with Verizon. If this route is unsuccessful or impractical, and the FCC's rules make it difficult for GNAPs and other carriers to obtain compensation for Internet-bound traffic, they may petition the FCC for a change in the Commission's rules. That GNAPs sought to game the existing rules, and lost, does not mean the FCC was arbitrary and capricious in its application of its own rules.

## IV. Conclusion

For the foregoing reasons, the petition for review is

*Denied.*