GLOBAL NAPS, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Verizon Telephone Companies,
et al., Intervenors.

No. 01-1192.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 5, 2002.

Decided June 4, 2002.

Christopher W. Savage argued the cause
and filed the briefs for petitioner.

Lisa E. Boehley, Counsel, Federal Com-
munications Commission, argued the cause
for respondents. With her on the brief
were John Rogovin, Deputy General Coun-
sel, Richard K. Welch, Associate General
Counsel, John E. Ingle, Deputy Associate
General Counsel, Catherine G. O'Sullivan,

and Robert J. Wiggers, Attorneys, U.S. Department of Justice. Nancy C. Garrison, Attorney, entered an appearance.

Aaron M. Panner argued the cause for intervenors. With him on the brief were Mark L. Evans, Michael E. Glover, Edward H. Shakin, and Lawrence W. Katz.

Before: EDWARDS, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Telecommunications Act of 1996, Pub.L. No. 104-104 (Feb. 8, 1996), requires the Federal Communications Commission ("FCC") to preempt the jurisdiction of any state regulatory commission that "fails to act to carry out its responsibility" to approve or reject interconnection agreements entered into by local exchange carriers ("LECs"). 47 U.S.C. § 252(e)(5). In this case, Global NAPs, Inc. ("GNAPs"), a LEC providing local exchange services in Massachusetts and other Eastern states, has petitioned for review of the FCC's refusal to preempt the regulatory authority of the Massachusetts Department of Telecommunications and Energy ("DTE") over the interpretation of an interconnection agreement between GNAPs and Verizon.

The disputed GNAPs-Verizon agreement provides that the carriers shall pay "reciprocal compensation" to one another for carrying and completing local calls made by customers of one company to customers of the other. Many of GNAPs' customers are Internet Service Providers ("ISPs"), who need telephone connections to provide their own customers with dial-up Internet access. However, the agreement does not specify whether calls made to ISPs are "local" calls for which reciprocal compensation is due. Because this question has been the source of much debate and confusion in the telecommunications field, and because the financial stakes are high, GNAPs sought a declaratory ruling from DTE that ISP-bound traffic is subject to reciprocal compensation under the terms of its agreement with Verizon. After waiting for the state agency to act on this request for nearly eight months, GNAPs filed a petition with the FCC, asking the federal Commission to preempt DTE's jurisdiction and resolve the issue itself.

Before the FCC responded to this request, DTE issued an order dismissing GNAPs' claim as moot in light of the state agency's decision that ISP-bound calls were not local within the meaning of an identically worded interconnection agreement between Verizon and MCI WorldCom. In light of DTE's dismissal, the FCC concluded that the state commission had not "fail[ed] to act to carry out its responsibility" under § 252 and, therefore, that preemption was not warranted. GNAPs now petitions for review of the FCC decision, arguing that the FCC misunderstood its obligations under § 252(e)(5), which, the company insists, compels the Commission to adjudicate the issue that DTE found to be moot. We reject the petition for want of merit.

█ We hold that the FCC's conclusion that § 252(e)(5) does not empower it to look behind a state agency's dismissal of a carrier's claim to evaluate the substantive validity of that dismissal is both a reasonable interpretation of that provision and consistent with the Commission's past practices and precedents. It is clear that DTE believed that it was conclusively resolving the issue of whether GNAPs had a right to compensation from Verizon for the costs associated with completing calls made to ISPs. It does not matter whether the state agency's position is correct on

the merits. Rather, as the FCC found, what matters is that DTE did not fail to act, so the federal Commission has no basis upon which to preempt the regulatory authority of the state agency. GNAPs' remedy lies not in FCC preemption, but rather in judicial review of DTE's order, whether in federal or in state court.

## I. BACKGROUND

GNAPs is a competitive LEC that provides local telephone service in several eastern states, including Massachusetts. Among its customers are a number of ISPs, who use connections supplied by GNAPs to allow their own customers to establish dial-up access to the Internet. Verizon is the incumbent LEC operating in Massachusetts. In April of 1997, as directed by the Telecommunications Act of 1996, GNAPs and Verizon entered into an interconnection agreement, which provided that each carrier would receive "reciprocal compensation" for completing calls made by one another's customers. See 47 U.S.C. § 251(b)(5) (requiring LECs to establish reciprocal compensation agreements). Thus, Verizon agreed to compensate GNAPs for the costs that the latter incurs when one of Verizon's subscribers calls a GNAPs subscriber within the same local calling area.

By the terms of the agreement, this reciprocal compensation obligation applies only to the "the transport and termination of *Local* Traffic," that is, to calls both originated and terminated in Massachusetts. That definition, however, leaves ambiguous whether "local traffic" includes ISP-bound traffic. Such calls are difficult to classify, because, while the ISP itself may be located within Massachusetts, the actual end-point of a call made to that provider may be a remote Internet site well outside the Commonwealth. Despite the substantial sums of money at stake –

millions of dollars, according to GNAPs, see Br. for the Pet'r 5 n.9 – the carriers made no attempt to resolve this ambiguity. They did, however, agree that whatever the proper interpretation, Verizon would pay GNAPs for ISP-calls if it paid compensation for such calls under the terms of identically worded interconnection agreements that it had made with other LECs, including MCI WorldCom. And, following an October 1998 decision in which DTE interpreted the Verizon/MCI WorldCom to require compensation for the delivery of ISP-bound traffic, Verizon began to pay such compensation to GNAPs as well. *See Complaint of WorldCom Technologies, Inc.*, D.T.E.97-116 (Mass. DTE Oct. 21, 1998) ("*October 1998 Order*") (Joint Appendix ["J.A."] 84).

The issue appeared settled until February 1999, when the FCC issued an order holding that calls made to ISPs would be considered as nonlocal for purposes of the Commission's rules regulating reciprocal compensation. *See In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-Bound Traffic*, 14 F.C.C.R. 3689, 1999 WL 98037 (Feb. 26, 1999) ("*Reciprocal Compensation Order*"), vacated, *Bell Atlantic Tel. Cos. v. FCC*, 206 F.3d 1 (D.C.Cir.2000). However, the FCC's *Reciprocal Compensation Order* left open the possibility that state regulators (such as DTE) could continue to treat ISP-bound traffic as local traffic, if interconnection agreements between carriers so provided, whether explicitly or implicitly. *See Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. ——, ——, 122 S.Ct. 1753, 1757, 152 L.Ed.2d 871 (2002).

In the wake of the *Reciprocal Compensation Order*, Verizon asked DTE to reverse its *October 1998 Order*, and hold that Verizon was no longer obligated to com-

pensate other carriers for ISP-bound calls. The company then stopped making such payments to GNAPs. GNAPs responded to this development in two ways. First, it filed a new tariff with the FCC in which it sought to impose a $.008 per minute charge on the delivery of all ISP-bound calls for which GNAPs did not receive compensation under an existing interconnection agreement. Verizon refused to pay, and challenged the validity of the tariff before the FCC. The Commission declared the tariff unlawful and void *ab initio*, a decision eventually affirmed by this court. *See Global NAPs, Inc. v. FCC*, 247 F.3d 252 (D.C.Cir.2001). Second, on April 16, 1999, GNAPs filed a complaint against Verizon with DTE, seeking a declaration that, under the terms of the carriers' interconnection agreement, ISP-traffic was included in the category of local traffic for which compensation was owed.

On May 19, 1999, DTE vacated its *October 1998 Order*. *See Complaint of MCI WorldCom, Inc.*, D.T.E. 97-116-C (Mass. DTE May 19, 1999) ("*May 1999 Order*") (J.A.136). The state agency declared that, in light of the *Reciprocal Compensation Order*, nothing in either its own rules or those of the FCC required Verizon to pay reciprocal compensation for Internet-bound traffic. At the same time, however, DTE did not purport to decide whether ISP-traffic might still be considered local under the terms of any particular interconnection agreement. It merely held that no then-viable DTE order mandated such a conclusion. Therefore, the separate contractual interpretation question regarding the meaning of "Local Traffic" in the GNAPs-Verizon agreement was "a now-unresolved dispute." *Id.* at 26 (J.A. 166). In other words, nothing in DTE's *May 1999 Order* purported to resolve the complaint that GNAPs had filed against Verizon the previous month.

DTE, however, did nothing in response to that complaint in the subsequent months. Finally, on December 9, 1999, GNAPs petitioned the FCC to preempt DTE's regulatory jurisdiction and decide for itself the question of whether "Local Traffic" included ISP-bound calls. Such preemption is authorized by the Telecommunications Act of 1996, but only where the "State commission fails to act to carry out its responsibility under [§ 252] in any proceeding or other matter under [§ 252]." 47 U.S.C. § 252(e)(5). On February 25, 2000, before the FCC had acted on the preemption request, DTE issued an order denying reconsideration of its *May 1999 Order*. In so doing, the state agency addressed GNAPs' complaint:

> In addition, we hereby dismiss as moot the Motion for Complaint of GNAPs in D.T.E. 99-39. As noted above, in its Motion for Complaint, GNAPs sought a declaratory ruling from the Department that, under the terms of its interconnection agreement with [Verizon], GNAPs should be compensated for terminating ISP-bound traffic from [Verizon] customers. The operative provisions of GNAPs' agreement (*i.e.* the definition of local traffic and the payment of reciprocal compensation) are in all material respects the same as the provision in the MCI-WorldCom agreement, which were the subject of the dispute in this proceeding (D.T.E. 97-116). In that we have affirmed, above, our Order in D.T.E. 97-116-C concerning this very subject, we find that the GNAPs Motion for Complaint is moot.

*Complaint of MCI WorldCom, Inc.*, D.T.E. 97-116-D, at 20 (Mass. DTE Feb. 25, 2000) ("*February 2000 Order*") (J.A. 269). The *May 1999 Order* had not decided whether Verizon's interconnection agreements included Internet-bound calls within the definition of "Local Traffic." Nonetheless, DTE's *February 2000 Order* determined

that reaffirming its previous order resolved the theretofore undecided interpretive question, and thus mooted GNAPs' complaint.

Soon after DTE's decision was released, the FCC's Common Carrier Bureau ("CCB") denied GNAPs' petition for preemption. *See In re Global NAPs, Inc.*, 15 F.C.C.R. 4942 (CCB Mar. 7, 2000) ("*CCB Order*") (J.A. 279). In doing so, CCB first noted that there was a reasonable question about whether a dispute over the *interpretation* of an interconnection agreement even constituted a "proceeding or other matter under [§ 252]" such that the FCC would have the power to preempt under § 252(e)(5). *Id.* at ¶¶ 5-7 (J.A. 281-82); *cf. Verizon Md.,* — U.S. at ——, 122 S.Ct. at 1758 (declining to decide whether a state commission's decision interpreting an interconnection agreement is a "determination under § 252").

In the end, however, the Bureau held that, because GNAPs' complaint was no longer pending before DTE, there was nothing for the FCC to preempt. DTE had resolved the matter, rejecting GNAPs' complaint. *See id.* at ¶ 7 (J.A. 282). Moreover, CCB explained that the FCC's statutory preemption authority did not empower the federal agency to examine the "underlying reasoning" supplied by DTE for its conclusion. The Bureau thus declined to look beyond DTE's decision to question the substantive validity of the state agency's judgment. *Id.* at ¶ 9 (J.A. 283). On review, the FCC affirmed CCB's order, agreeing with the Bureau's analysis in all respects. *See In re Global NAPs, Inc.*, Order on Review, 16 F.C.C.R. 4976, 2001 WL 167446 (Feb. 21, 2001) (J.A. 388). GNAPs now challenges the Commission's decision before this court.

## II.  DISCUSSION

■ The single issue presented in this case is whether the FCC reasonably determined that DTE did not "fail[ ] to act to carry out its responsibility" to adjudicate the dispute between GNAPs and Verizon over whether ISP-bound calls are "local" within the meaning of their interconnection agreement. Only where there is such a failure does § 252(e)(5) obligate the Commission to step in. Otherwise – such as where the state agency actually "makes a determination" under § 252 – there is no statutory basis for FCC preemption. Under such circumstances, an aggrieved party may bring an action for judicial review in federal court under § 252(e)(6), or, if that provision is inapplicable and there is no federal question at issue, in state court. *Cf. Verizon Md.,* — U.S. at ——-——, 122 S.Ct. at 1758-60 (holding that federal courts have jurisdiction to review decisions of state commissions interpreting interconnection agreements, at least where review turns on issues of federal law, and that this jurisdiction is not stripped by § 252(e)(6)).

Section 252(e)(6), entitled "Review of State commission actions," reads as follows:

> In a case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act. In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

Both the plain language and structure of this provision suggest that the remedies it authorizes are distinct and mutually exclusive. If a state commission fails to act,

preemption is a viable option; however, if the state agency takes final action disposing of the pending claim, that action can be undone only by direct judicial review in the appropriate forum. And, in the present case, it does not matter whether DTE's decision to dismiss GNAPs' complaint as moot was reasonable. What matters is that the FCC did not err in concluding that DTE's *February 2000 Order* did not constitute a "failure to act." Therefore, the FCC correctly held that DTE is not subject to preemption.

When DTE issued its *February 2000 Order,* the state agency believed that it was acting on, and disposing of, the issues raised in GNAPs' Motion for Complaint. For whatever reason, the state commission thought that upholding its *May 1999 Order* decided (or reconfirmed) that ISP-bound traffic was not local traffic under the Verizon-MCI WorldCom agreement, and that this determination effectively resolved the dispute between the parties to the Verizon-GNAPs agreement. Even if the state agency's dismissal was premised on faulty or incomprehensible legal reasoning, it nonetheless constituted final action disposing of GNAPs' complaint.

In the Orders now on review, the FCC decided that it would not preempt an already completed state proceeding, at least where doing so would require the Commission to examine the underlying reasoning given by the state agency for terminating that proceeding. *See CCB Order,* at ¶¶ 7-9 (J.A. 282-83); Br. for Respondents 18-19. In so holding, the FCC has effectively construed § 252(e)(5) as not covering situations where a state agency affirmatively acts to dispose of a case, and in so doing at least purports to resolve the issues presented to it. *See also In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* First Report and Order, 11 F.C.C.R.

15499, ¶ 1285, 1996 WL 452885 (Aug. 8, 1996), *aff'd in part, vacated in part, Iowa Utils. Bd. v. FCC,* 120 F.3d 753 (8th Cir. 1997), *aff'd in part, rev'd in part, sub nom. AT&T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) ("The Commission will not take an expansive view of what constitutes a state's 'failure to act.' Instead, the Commission interprets 'failure to act' to mean a state's failure to complete its duties in a timely manner.").

The FCC's interpretation thus suggests that only if the state commission either does not respond to a request, or refuses to resolve a particular matter raised in a request, does preemption become a viable option. Under this reading, the purpose of § 252(e)(5) is to hold out the FCC as an *alternative* forum for the adjudication of certain disputes related to interconnection agreements; the statute does not authorize the Commission to sit as an appellate tribunal to review the correctness of state resolution of such disputes. We believe that this understanding of the preemption provision is neither incompatible with congressional intent nor unreasonable. Instead, it seems quite faithful to the key statutory language: in this context, "fails to act" suggests incomplete action or no action, not misguided action. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 814 (1993) (defining "fail" when used with the infinitive as "to neglect to do something; leave something undone; be found wanting in not doing something").

Indeed, GNAPs' objection here seems less to DTE's supposed inaction than to the quality of its action. Petitioner thus focuses our attention on the "carry out its responsibility" language in § 252(e)(5), suggesting that these words require the FCC to take a more substantive look at what a state commission has done before

absolving itself of its duty to preempt. *See* Br. for Pet'r 20. While this phrase may be ambiguous, the FCC's preferred interpretation is entirely plausible, and therefore commands deference under Step Two of *Chevron. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984).

In essence, the Commission reasonably concluded that the "responsibility" invoked by the statute is the state agency's responsibility to make a determination – that is, to mediate, to arbitrate, to approve, and (possibly) to interpret and enforce an interconnection agreement – rather than the responsibility to make a determination that is satisfactory to all parties, or to the FCC itself. This construction, which focuses on whether the state agency has acted, rather than on the quality of its action, is consistent with the text and structure of the statute. This approach also allows parties frustrated by the results from a state commission to know immediately whether to seek preemption or judicial review, thereby saving the time and expense of simultaneous litigation on multiple fronts.

Finally, GNAPs contends that the FCC's holding in this case was inconsistent with the agency's previous decisions under § 252(e)(5). According to GNAPs, the Commission has "consistently held that it is not bound by the mere fact that a state regulator has issued an order, or by the mere words of such an order, in assessing whether the state regulator has acted to carry out its responsibility with regard to a dispute." Br. for Pet'r 23 (internal quotation marks omitted). GNAPs points to two FCC decisions, neither one of which supports GNAPs' position in this case.

The first decision involved a request for preemption brought by MCI. In that case, the Commission rejected the argu-

ment that preemption was inappropriate merely because a state agency had issued a final arbitration order. *See In re Petition of MCI for Preemption Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996,* 12 F.C.C.R. 15594, at ¶ 32, 1997 WL 594281 (Sept. 26, 1997). However, the point of the FCC's statement was merely that a state agency can fail to act under § 252(e)(5) where it issues a general dismissal order that does not resolve all issues "clearly and specifically" presented to it. *See id.* at ¶ 27. Indeed, in *MCI,* the FCC ultimately *declined* to preempt, because the Missouri Public Service Commission had acted on all such issues; other claims that the carrier argued should have been decided had not been advanced with sufficient clarity and specificity to make the state's agency's inaction a "failure to act" within the meaning of § 252(e)(5). *See id.* at ¶ 36.

In the instant case, the claim over which GNAPs seeks preemption – the definition of "Local Traffic" in its agreement with Verizon – was properly presented to DTE and the state agency explicitly addressed that claim, finding it to be moot. Accordingly, there is no inconsistency between the FCC's refusal to preempt here and its refusal to do so in *MCI.*

The second decision to which GNAPs points involved a situation in which the FCC actually did decide to preempt a state commission's jurisdiction. *See In re Starpower Communications, LLC, Pet. for Preemption of Jurisdiction of the Vir. State Corp. Comm'n Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996,* 15 F.C.C.R. 11277, 2000 WL 767701 (June 14, 2000). While it is true that the FCC concluded that "the mere issuance of the [state] Commission's final order in each proceeding" was insufficient to fulfill the state agency's responsibilities under § 252(e)(5), *id.* at ¶ 8, the *Starpower* deci-

sion actually supports the FCC's position in the present case.

*Starpower* concerned a preemption request brought by a LEC that had sought – and failed to receive – a declaration from a state agency (the Virginia State Corporation Commission) that ISP-bound traffic was local under an interconnection agreement. The Virginia commission expressly declined even to consider Starpower's petition and, instead, encouraged the parties to seek relief from the FCC. *See id.* at ¶ 4. Thus, when Starpower petitioned the FCC for preemption, the federal agency accepted, explaining that "[b]ecause the [state agency] decisions *explicitly declined to take any action* with respect to Starpower's petitions ... we are compelled to conclude that the Virginia Commission 'failed to act to carry out its responsibility' under section 252." *Id.* at ¶ 7 (emphasis added).

The FCC went on to note that, under Commission precedent, a state agency fulfills its responsibilities under § 252(e)(5) "when it resolves the merits of a section 252 proceeding or dismisses such a proceeding on jurisdictional or procedural grounds." *Id.* at ¶ 8. This is just what DTE did here. In doing so, DTE – in stark contrast to the Virginia commission – did not recommend that the parties turn to the FCC for resolution of their dispute. Instead, DTE acted as if it was adjudicating (or at least confirming its earlier adjudication) of GNAPs' complaint. This decision may have produced a questionable result, but it was hardly inaction.

In sum, *MCI* and *Starpower* support the Commission's decision in this case. In neither of those prior cases did the FCC so much as suggest that a state agency's dismissal of an issue on the merits constitutes a failure to act. Quite the opposite. And because DTE acted here, the FCC's determination that it lacked the authority under § 252(e)(5) to second guess the validity of the state agency's decision under the guise of preemption was neither contrary to the statute nor to the Commission's past practices. Accordingly, GNAPs' challenge must fail.

### III. CONCLUSION

For the reasons given above, we hold that the FCC's decision not to preempt DTE's jurisdiction over GNAPs' complaint represented a reasonable interpretation of § 252(e)(5). We therefore deny the petition for review.

*It is so ordered.*